1  Mark T. Flewelling (# 96465)
     mflewelling@afrct.com
2  Robert C. Little (# 182396)
     rlittle@afrct.com
3  David M. Newman (# 246351)
     dnewman@afrct.com
4  ANGLIN, FLEWELLING, RASMUSSEN,
     CAMPBELL & TRYTTEN LLP
5  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
6  Tel:  (626) 535-1900 | Fax:  (626) 577-7764

7  Attorneys for Defendant
   WELLS FARGO BANK, N.A., successor by
8  merger with Wells Fargo Bank Southwest, N.A.,
   formerly known as Wachovia Mortgage, FSB,
9  formerly known as World Savings Bank, FSB
   (Wells Fargo)
10

11

12               UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

14

15  KAZUMI MIYAYAMA an individual        Case No.:8:12-CV-02062 DOC (ANx)

16              Plaintiff,               [Assigned to Hon. David O. Carter]

17       vs.                            **WELLS FARGO'S**
                                        **SUPPLEMENTAL BRIEFING RE:**
18  WELLS FARGO BANK, N.A.              **POST-MERGER HOLA**
   successor in interest to WORLD       **PREEMPTION**
19  SAVINGS BANK FSB; NATIONAL
   CITY MORTGAGE CO.; US BANK
20  N.A. as TRUSTEE FOR THE
   WACHOVIA MORTGAGE LOAN
21  TRUST, LLC, MORTGAGE
   PASSTHROUGH CERTIFICATES,
22  SERIES 2005-A; NDEX WEST, LLC
   and DOES 1-50;
23
              Defendants,
24

25  / / /

26  / / /

27  / / /

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**TABLE OF CONTENTS**

**Page**

1.  INTRODUCTION..................................................................................1

2.  LEGAL ANALYSIS AND ARGUMENT.......................................................2

    A.    The vast majority of district courts in California have correctly held that HOLA preemption applies to Wells Fargo post-merger. ......................................................................................2

    B.    The Arizona district court in *Gerber* incorrectly decided HOLA preemption. Though it offers a memorable quote regarding the analysis of "nothing," the opinion itself offers nothing to support its contrary conclusion that HOLA does not apply post-merger. ......................................................................................3

    C.    Exercising its plenary authority over FSBs and their loans, the OTS has mandated that HOLA preemption attaches to and survives the sale or transfer of a FSB-originated loan.........................5

    D.    The recent *Akopyan* decision confirms HOLA's application after the Wachovia–Wells Fargo merger. ...............................8

    E.    The Parties specifically chose HOLA and its implementing regulations as the governing law, and they mutually agreed that HOLA would apply to the FSB's successors. ...................10

    F.    A judicial construction of the loan which fails to apply HOLA impermissibly changes the terms of the contract................................11

3.  CONCLUSION. ..................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Auer v. Robbins,*
   519 U.S. 452 (1997) ................................................................ 5

*California v. Coast Fed. Sav. & Loan Ass'n,*
   98 F. Supp. 311 (S.D. Cal. 1951) ........................................ 1

*Castillo v. Wachovia Mortgage,*
   2012 U.S. Dist. LEXIS 50926 (N.D. Cal. Apr. 11, 2012) ................................. 2

*DeLeon v. Wells Fargo Bank, N.A.,*
   729 F. Supp. 2d 1119 (N.D. Cal. 2010) .......................................... 2, 3

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
   458 U.S. 141 (1982) ................................................................ 7

*Gerber v. Wells Fargo Bank, N.A.,*
   2012 U.S. Dist. LEXIS 15860 (D. Ariz. Feb. 9, 2012) ..............................*passim*

*Gorton v. Wells Fargo Bank, N.A.,*
   2012 U.S. Dist. LEXIS 168158 (C.D. Cal. Nov. 27, 2012) ........................... 2, 3

*Guerrero v. Wells Fargo Bank, N.A.,*
   2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sep. 14, 2010) ................................. 2

*Haggarty v. Wells Fargo Bank, N.A.,*
   2011 U.S. Dist. LEXIS 9962 (N.D. Cal. Feb. 2, 2011) ................................... 2, 3

*Hague v. Wells Fargo Bank, N.A.,*
   2012 U.S. Dist. 41013. (N.D. Cal. Mar. 26, 2012) ............................................ 2

*Long Island Care at Home, Ltd. v. Coke,*
   551 U.S. 158 (2007) ................................................................ 5, 7

*Progressive Consumers Fed. Credit Union v. United States,*
   79 F.3d 1228 (1st Cir. 1996) .......................................................... 11

*Sato v. Wachovia Mortgage, FSB,*
   2011 U.S. Dist. LEXIS 75418 (N.D. Cal. July 13, 2011) ................................. 2

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Settle v. World Savings Bank, FSB,*
2012 U.S. Dist. LEXIS 4215 (C.D. Cal. Jan. 11, 2012).........................................8

*Silvas v. E\*Trade Mortgage Corp.,*
514 F.3d 1001 (9th Cir. 2008) ..............................................................5

*Tamburri v. Suntrust Mortgage, Inc.,*
875 F. Supp. 2d 1009 (N.D. Cal. 2012) ...............................................2

*Williams v. Wells Fargo Bank, N.A.,*
2013 U.S. Dist. LEXIS 68615 (C.D. Cal. May 13, 2013).................1, 2, 3

**STATE CASES**

*Akopyan v. Wells Fargo Home Mortgage, Inc.,*
215 Cal. App. 4th 120 (Apr. 4, 2013).........................................*passim*

*Maudlin v. Pacific Decision Sciences Corp.,*
137 Cal. App. 4th 1001 (2006) .............................................................11

*Nevin v. Salk,*
45 Cal.App.3d 331 (1975) ..................................................................11

*Safeco Ins. Co. v Robert S.,*
26 Cal. 4th 758 (2001) .......................................................................12

*Wade v. Diamond A Cattle Co.,*
44 Cal. App. 3d 453 (1975) ................................................................12

**FEDERAL STATUTES**

12 U.S.C. § 1461, *et seq.* ...............................................................10, 11

12 U.S.C. § 5553.....................................................................................8

**STATE STATUTES**

CAL. CIV. CODE § 2923.5 ......................................................................2

**REGULATIONS**

12 C.F.R. § 560.2....................................................................................4, 5

12 C.F.R. § 560.2(a) and (c) ...............................................................4, 9

12 C.F.R. § 560.2(b)(10) .......................................................................7

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**OTHER AUTHORITIES**

1 Witkin, *Summary of California Law,* Contracts, § 715 (8th ed. 1973) ................ 11

9 Witkin, *Summary of California Law*, Corporations § 198 (10th Ed. 2005) ........ 11

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# 1.  INTRODUCTION.

Last month, this Court correctly held that federal preemption under the Home Owners' Loan Act (HOLA) applies to Wells Fargo's servicing of a World Savings loan after its merger with Wachovia.  *Williams v. Wells Fargo Bank, N.A.*, No. SA CV 13-0303-DOC (MLGx), 2013 U.S. Dist. LEXIS 68615, *6–*12 (C.D. Cal. May 13, 2013).  *Williams* correctly concluded that HOLA preempted a borrower's state law claims involving a loan that originated with a federal savings bank but was later acquired by a national bank through merger.

The court thus implicitly recognized the "dual aspect" of HOLA preemption—HOLA applies to *both* federal savings associations *and* the loans they originate, cradle to grave.  *Akopyan v. Wells Fargo Home Mortgage, Inc.*, 215 Cal. App. 4th 120, 143 (Apr. 4, 2013) ("We … conclude that the OTS intended to occupy the field of lending regulation as to *both* federal thrifts *and* their loans." [emphasis added]); *California v. Coast Fed. Sav. & Loan Ass'n*, 98 F. Supp. 311 (S.D. Cal. 1951) (noting the "cradle to grave" regulatory scheme created by HOLA and its implementing regulations as promulgated by the Office of Thrift Supervision's (OTS's) predecessor, the Federal Home Loan Bank Board (FHLBB)).

In its outlier opinion—*Gerber v. Wells Fargo Bank, N.A.*, No. CV 11-01083-PHX-NVW, 2012 U.S. Dist. LEXIS 15860 (D. Ariz. Feb. 9, 2012)—the Arizona district court failed to explain how it could rely on OCC regulatory opinions, but ignore equally effective and more relevant OTS regulatory opinions.  The court never explained the reasoning which might permit its wholesale disregard of fundamental principles of corporate succession law.  The Arizona court was also uninformed by the subsequent *Akopyan* opinion discussed below, and presumably did not consider the express terms of the promissory note and deed of trust because Gerber himself was not a borrower.

As discussed below, all of these authorities support the vast majority of district courts which have correctly held that HOLA preemption continues to apply to

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  FSB-originated loans acquired by a national bank, or any third party investor or
2  servicer for that matter, notwithstanding the fact that they lack a HOLA charter.

### 2. LEGAL ANALYSIS AND ARGUMENT

**A. The vast majority of district courts in California have correctly held that HOLA preemption applies to Wells Fargo post-merger.**

6  In *Williams*, this Court correctly held that a post-merger servicing claim under
7  California Civil Code § 2923.5 was preempted under HOLA. "The same HOLA
8  preemption analysis applies even after the FSB merges into a national bank, as
9  long as the mortgage originated with an FSB." *Id*. at *9, *citing Castillo v.*
10  *Wachovia Mortgage*, No. C-12-0101 EMC, 2012 U.S. Dist. LEXIS 50926, at *5
11  (N.D. Cal. Apr. 11, 2012) and *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d
12  1119, 1126 (N.D. Cal. 2010).[1]

13  The *Williams* opinion squarely accords with well over a dozen decisions in
14  district courts decided both before and after *Gerber*.[2]

15  For example, in *Gorton v. Wells Fargo Bank, N.A.*, No. SACV 12-1245 JVS
16  (MLGx), 2012 U.S. Dist. LEXIS 168158 (C.D. Cal. Nov. 27, 2012), the court held:

> The relevant preemption analysis is unaltered by the merger of
> Wachovia [] with Wells Fargo… HOLA preemption continues to
> apply to loans originated by a federal savings bank even after those
> banks are merged into national banking associations.

*Id*. at *12, citing *Castillo* and *DeLeon*, *supra*.

---

[1] In *Williams*, the plaintiff failed to address or discuss *Gerber*. Plaintiff's opposition to Wells Fargo's motion to dismiss makes a bare assertion that HOLA preemption does not apply post-merger, citing *Tamburri v. Suntrust Mortgage, Inc.*, 875 F. Supp. 2d 1009 (N.D. Cal. 2012) without analysis or discussion.

[2] *See, e.g., DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010); *Hague v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. 41013, *7. (N.D. Cal. Mar. 26, 2012); *Sato v. Wachovia Mortgage, FSB*, No. 11-00810 EJD, 2011 U.S. Dist. LEXIS 75418, *14 (N.D. Cal. July 13, 2011); *Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2011 U.S. Dist. LEXIS 9962, *10–*11 (N.D. Cal. Feb. 2, 2011); *Guerrero v. Wells Fargo Bank, N.A.*, No. CV 10-5095-VBF(AJWx), 2010 U.S. Dist. LEXIS 96261, *8–*9 (C.D. Cal. Sep. 14, 2010).

1    *Williams* and *Gorton* are consistent with the numerous district courts correctly

2    applying HOLA preemption to claims against Wells Fargo after its acquisition by

3    merger of Wachovia's FSB-originated loans.  *See* Footnote 2, *ante*.

**B.    The Arizona district court in *Gerber* incorrectly decided HOLA preemption. Though it offers a memorable quote regarding the analysis of "nothing," the opinion itself offers nothing to support its contrary conclusion that HOLA does not apply post-merger.**

7        In contrast to the *Williams* and *Gorton* line of authority, the district court sitting

8    in Arizona in *Gerber* held that HOLA does not apply post-merger to Wells Fargo

9    notwithstanding the loan's FSB-provenance which necessarily invoked HOLA

10   preemption.  *Gerber* at *4.

11       The *Gerber* court recognized that the loans, as here, were originated by "World

12   Savings Bank (a federal savings bank), (ii) Wachovia (also a federal savings bank

13   acquired World Savings and (iii) Wells Fargo acquired Wachovia."  *Gerber*, *8.

14   But after conducting a cursory examination of HOLA, it reached its unsupported

15   conclusion that HOLA did not apply because Wells Fargo was a national bank.

16   Then, *Gerber* primarily set out on a preemption analysis under the National Bank

17   Act (NBA) to rule that federal preemption did not apply to a state consumer law.

18       Acknowledging that its view on HOLA preemption differed from the majority

19   of decisions such as *Haggarty v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS

20   9962, *11 (N.D. Cal. Feb. 2, 2011) and *Guerrero v. Wells Fargo Bank, N.A.*, 2010

21   U.S. Dist. LEXIS 96261, * 11 (C.D. Cal. Sept. 14, 2010), the *Gerber* court

22   concluded in its memorable quote that the decisions "cited either (a) nothing, (b)

23   each other, or (c) generic statements of law about corporations succeeding to the

24   rights of the entities they acquire." *Gerber,* *9, collecting majority cases at *9–*10.

25       But *Gerber* itself cited nothing to support its finding that "preemption is not

26   some sort of asset that can be bargained, sold, or transferred."  *Id*.  The contrary is

27   true according to the OTS and the FHLBB.  As briefed below, this unsupported

28

1   assertion is contrary to the OTS's opinion, and it is inconsistent with the loan

2   documents.

3      From the outset, it is salient to note that Gerber was not a borrower.  He was a

4   bidder at a foreclosure sale of a second deed of trust.  After he took title to the

5   property subject to a first deed of trust, he then sued Wells Fargo asserting that

6   foreclosure sales of junior trust deeds violated an Arizona consumer statute.

7   *Gerber,* *4.  Wells Fargo had argued in its second motion to dismiss that an earlier

8   "ruling" by the court created liability for "deceptive practices if it knew or should

9   have known that the senior lien was undersecured but intentionally auctioned the

10  junior lien first," and that such liability was preempted by HOLA or the NBA.

11  *Gerber,* *6.

12     Notably, the district court apparently had no occasion to examine the loan

13  contract between the borrower and Wells Fargo containing the governing HOLA

14  provisions discussed in Sections E. and F., *post*, because Gerber was not the

15  borrower.  Accordingly, the court also conducted zero analysis of the contractual

16  terms of an FSB-originated loan contract or applicable regulatory interpretations.

17     Moreover, the key measure of *Gerber's* vulnerability is the court's cursory and

18  incomplete analysis of the HOLA regulations, and its failure to review controlling

19  regulatory opinions by the OTS and the FHLBB.  Reviewing only two sentences in

20  12 C.F.R. §560.2(a) and (c), the *Gerber* court speeds to the conclusion that:

21  "HOLA preemption was created by the OTS for the benefit of federal savings

22  associations and §560.2 plainly seeks to avoid burdening the operations of federal

23  savings associations.  Wells Fargo is not a federal savings association and its cited

24  cases are not persuasive."  (emphasis omitted).  *Gerber*, *10.  The *Gerber* opinion

25  ended its HOLA analysis there, quickly turning next to the question of whether the

26  claims were preempted by the NBA.

27     In stark contrast to its short and conclusory analysis of HOLA preemption, the

28  *Gerber* court conducted a comprehensive review of NBA preemption that included

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   citations to no less than five Interpretation and Advisory Letters issued by the

2   Office of the Comptroller of the Currency (OCC).[3]  The OCC letters provided

3   critical guidance upon which the *Gerber* Court relied to reach its conclusion that

4   while NBA preemption applied, it did not preempt the particular claims at issue.

5       Had *Gerber* conducted the same comprehensive analysis of the HOLA

6   regulations, it would have likewise focused on OTS and FHLBB opinion letters

7   establishing that HOLA "preemption would exist regardless of whether the loans in

8   question are sold by the federal association to a third party [or] are being serviced

9   by a third party[.]"[4]  And its result would, as it must, decidedly shift.

10      **C.   Exercising its plenary authority over FSBs and their loans,
        the OTS has mandated that HOLA preemption attaches to
11          and survives the sale or transfer of a FSB-originated loan.**

12      As the *Gerber* court no doubt recognized when it relied on the five OCC letter

13  opinions in its NBA analysis, courts must give deference to a federal agency's

14  reasonable interpretation of its own regulations.  *Auer v. Robbins,* 519 U.S. 452,

15  461 (1997).  The agency's interpretation of its own regulations controls unless the

16  interpretation is plainly erroneous or inconsistent with the regulations.  *Long Island*

17  *Care at Home, Ltd. v. Coke,* 551 U.S. 158, 170–171 (2007).  In *Silvas v. E*Trade*

18  *Mortgage Corp.,* 514 F.3d 1001, 1005 (9th Cir. 2008) the Ninth Circuit noted that

19  the OTS's construction of the preemption analysis under Section 560.2—the very

20  regulation *Gerber* reviewed to make its decision—"must be given controlling

21  weight."

22      In 2003, the OTS interpreted 12 C.F.R. § 560.2 to preempt the New Jersey

23

24  _____

    [3]  *Gerber* at *11, *citing* OCC Interpretative Letter No. 1005, 2004 WL 346570
25  June 10, 2004; *id.* at *15, *citing* OCC Advisory Letter AL 2002-3, 2002 WL
    521380 at *1 (Mar. 22, 2002); *id.* at 18, *citing* OCC Interpretative Letter No. 1005,
26  2004 WL 3465750; *id.* at *20, *citing* OCC Interpretative Letter No. 1005, 2004
    WL 33465750; *id.* at *23, *citing* OCC Advisory Letter AL 2002-3, 2002 WL
27  521380 (Mar. 22, 2002).

28  [4]  Op. Gen. Counsel FHLBB (Aug. 13, 1985), *available* at 1985 FHLBB LEXIS
    178 at *5.  (*See* Supp. RJN, Ex. C).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Predatory Lending Law despite the fact that, as here, an assignee of an FSB-originated loan lacked a HOLA charter.  The OTS succinctly summarized the question before it:

> You further ask whether purchasers or assignees of loans originated by federal savings associations would be subject to claims and defenses that would not apply to the federal savings association that originated the loans[.]

The OTS provided its definitive answer to that question:

> Where the original creditor is a federal savings association, the borrower's ability to assert claims and defenses against that type of creditor is limited by federal preemption[.]  This result would be consistent with the general principle that loan terms should not change simply because an originator entitled to federal preemption may sell or assign a loan to an investor that is not entitled to federal preemption[.]

OTS Op. Letter No. P-2003-5 (July 22, 2003) p. 13 & n. 18, *available at* 2003 OTS LEXIS 6, p. 5 [at *13] (hereafter OTS Opinion Letter).  *See* Supplemental Request for Judicial Notice (Supp. RJN), Ex. D.  In the decade since issuing its opinion, the OTS's answer regarding the breadth and scope of HOLA preemption remains definitive.  The OTS Opinion Letter itself relied on a 1985 Opinion Letter issued by the FHLBB[5], which unequivocally concluded:

> It is our opinion that such preemption would exist regardless of whether the loans in question are sold by the federal association to a third party, are being serviced by a third party, or whether the escrow deposits are held at a federal association while the

---

[5]   "In 1989, the FHLBB was replaced by the Office of Thrift Supervision (OTS) which was given the same plenary power to regulate federal savings associations." *Akopyan*, *supra*, 215 Cal. App. 4th 120, 138.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    loans have been sold in the secondary market.

2    Op. Gen. Counsel, FHLBB (Aug. 13, 1985), *available at* 1985 FHLBB LEXIS 178

3    at *5.  (*See* Supp. RJN Ex. C.)

4        By their Congressionally-mandated implementation of HOLA through the

5    promulgation of regulations and controlling regulatory interpretation, the OTS and

6    its predecessor FHLBB expressly determined that HOLA preemption survives

7    when the FSB loan is sold or otherwise transferred to a third party without a

8    HOLA charter, like a national bank acquiring FSB-originated loans through

9    merger.  The rationale is that state law "might interfere with the ability of  federal

10   savings associations to sell mortgages that they originate under a uniform federal

11   system."  OTS Opinion Letter at p. 7 & n. 18; *Akopyan*, 148.  And the FSB's

12   "sale" of mortgages, of course, is a right that is itself completely free of state

13   "imposed requirements."  12 C.F.R. § 560.2(b)(10).

14       As previously noted, the judiciary is bound to accord deference to a federal

15   agency's interpretation of its own regulations unless plainly erroneous or

16   inconsistent with those regulations.  *Long Island, supra,* 551 U.S. at 170–71.  And

17   the OTS and FHLBB opinion letters are entirely consistent with the Congressional

18   mandate that HOLA exclusively and comprehensively preempts the field.  *Fidelity*

19   *Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153 (1982).

20       Leaving no room for doubt that the 2003 OTS Opinion Letter remains

21   controlling, in late 2011, the OTS's post-Dodd Frank successor, the OCC, declared

22   that all regulatory guidance and interpretations issued by the OTS remain in effect

23   unless specifically rescinded or modified.  *See* OCC 2011-47, OTS Integration

24   Letter (Dec. 8, 2011) (OCC Integration Letter).  (Supp. RJN, Ex. E.)

25       Observing that the OTS responsibilities were transferred to the OCC effective

26   July 21, 2011, the OCC Integration Letter states:  "As a result [of the 2010 Dodd-

27   Frank Act], the OCC assumed the responsibility for the ongoing supervision …

28   and regulation of federal savings associations.  The legislation continues all OTS

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

orders, resolutions, determinations, agreements, regulations, interpretive rules, other interpretations, guidelines, procedures, and other advisory materials in effect the day before the transfer date."[6] The OCC Integration Letter indicates further that "OCC bulletins will announce these rescissions," and "to minimize confusion, documents will be watermarked as rescinded on the OCC Web site, or former OTS Web site, as applicable." The 2003 OTS Opinion has never been watermarked, and remains effective and controlling.[7]

### D. The recent *Akopyan* decision confirms HOLA's application after the Wachovia–Wells Fargo merger.

The review in *Akopyan v. Wells Fargo Home Mortgage, Inc.*, 215 Cal. App. 4th 120, 143 (Apr. 4, 2013) involved a consolidated appeal of putative class actions that were dismissed after the trial court sustained a demurrer without leave to amend. Plaintiffs alleged that Aurora Loan Services LLC, which the court found was a subsidiary of a federal savings bank, Aurora Bank, FSB, breached the loan agreement and violated state law by misapplying payments and then charging late fees arising from the misapplication. *Akopyan*, 130. The trial court held the breach of contract claims against Aurora were preempted by HOLA even though Aurora had acquired the loans from a state-chartered lender that was not otherwise entitled to a HOLA preemption defense.

In its comprehensive opinion surveying the history of HOLA and its implementing regulations, the California Court of Court began its analysis with HOLA's express authorization to FSBs to "invest in, sell, or otherwise deal in"

---

6 HOLA field preemption still exists under Dodd-Frank for all loans, like this one, originated prior to its enactment. 12 U.S.C. § 5553. "[C]laims related to contracts formed prior to the enactment of Dodd-Frank are subject to the preemption analysis in effect at that time." *Settle v. World Savings Bank, FSB*, 2012 U.S. Dist. LEXIS 4215, at *45 (C.D. Cal. Jan. 11, 2012). The fact that Congress ensured retroactive HOLA field preemption for existing FSB *loans* indurates the dual aspect of HOLA to *both* FSBs *and* their loans.

7 The list of rescinded opinions may be found here: http://www.occ.gov/news-issuances/bulletins/rescinded/occ-rescinded.html.

residential property loans … intended to encourage such institutions to provide credit for housing safely and soundly." *Akopyan,* 139, *citing* 12 U.S.C. §1464(a) and (c).  The Court concluded that analysis by holding:  "We find *Ocwen* and *Molosky* persuasive and conclude that the OTS intended to occupy the field of lending regulations as to *both* federal thrifts *and* their loans."  *Akopyan*, 143 (emphasis added).

   This dual aspect of HOLA preemption which applies to both FSBs and the loans they originate and may later sell or transfer was overlooked by *Gerber*'s *ipse dixit* conclusion that HOLA does not apply to Wells Fargo.  The breadth of the *Akopyan* Court's analysis stands in stark contrast to *Gerber*, as well.  The district court in *Gerber* analyzed two sentences in §560.2(a) and (c) to speed to its minority conclusion that HOLA was designed only to apply to federal savings associations.  *Akopyan*, on the other hand, examined the 2003 OTS Opinion Letter:

> In reviewing the assignee liability provisions of the New Jersey predatory lending law (N.J. Stat. Ann. § 46:10B-22 et seq.), the OTS extended preemption to federally originated loans sold or assigned to investors not entitled to preemption on the principle that "loan terms should not change simply because an originator entitled to federal preemption may sell or assign a loan to an investor that is not entitled to federal preemption."  Its rationale was that state law "might interfere with the ability of federal savings associations to sell mortgages that they originated under a uniform federal system."

*Id.* at 148, *quoting* OTS Opinion Letter, *supra*, at 7 & n. 18.

   Responding to the borrower's argument that "the principle that loan terms should not change applies equally when a state originated loan is assigned to a federal thrift," the *Akopyan* Court held:  "But the rationale for applying preemption to the assignees of federal thrifts is to allow the thrifts themselves greater freedom

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

from state interference." *Akopyan*, 148.

### E. The Parties specifically chose HOLA and its implementing regulations as the governing law, and they mutually agreed that HOLA would apply to the FSB's successors.

The parties expressly agreed that HOLA would govern and construe both the promissory note and deed of trust.  The promissory note states at its Paragraph 12:

> GOVERNING LAW, SEVERABILITY.
>
> This note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law[.]"

Supp. RJN, Ex. A ("Note") at ¶ 12.  The deed of trust adopts the same term:

> GOVERNING LAW; SEVERABILITY.
>
> This Security Instrument and the Secured notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law")[.]

Supp. RJN, Ex. B ("Deed of Trust") at ¶ 15.  "[F]ederal law and regulations… for federally chartered savings institutions" means the Home Owners' Loan Act.  12 U.S.C. § 1461, *et seq.*  The parties likewise agreed that "any person who takes over Lender's rights or obligations under this Security Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements."  Supp. RJN, Ex. A, at ¶ 11.

The Note even includes "successors" in its definition of the word "Lender": "World Savings Bank, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom the note is transferred."  (original capitalization)  Supp. RJN, Ex. A at ¶ 1. The deed of trust has a comparable definition at ¶ 1(c).  Supp. RJN, Ex. B

Both contracts thus contemplated either World Savings's sale of its loan or its sale of itself.  In the event of such a sale, the parties agreed that World

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Savings's successor—Wells Fargo—would not only "have all" of World

2   Savings' "rights" under the deed of trust, but must also "keep all" of World

3   Savings' "agreements" in the deed of trust.  One of those "rights" and

4   "agreements" under the contract is the application of "federal…regulations

5   including those for federally chartered savings institutions."  *See* Supp. RJN Ex.

6   A at ¶ 12; *id.*, Ex. B at ¶ 15.

7        The choice of law clause in both the note and deed of trust, coupled with the

8   "successors" clause in the deed of trust, therefore reveal that the parties intend to

9   continue HOLA's application to the loan well beyond World Savings' origination

10   and initial ownership.[8]

11   **F.   A judicial construction of the loan which fails to apply HOLA**
        **impermissibly changes the terms of the contract.**

12

13        The parties also agreed that neither the note nor the deed of trust could be

14   modified unless both the "Lender" and "Borrower" signed a writing expressly

     modifying the contract.  (Supp. RJN Ex. B at ¶ 23.)[9]

15

16        Because the parties agreed that HOLA continued to apply regardless of the

17   sale of the lender or the loan, an order that adopts *Gerber* erroneously jettisons

18   HOLA when the FSB merges with a national bank and would violate the

19   "modifications" clause in the deed of trust requiring both parties' assent to the

20   change.  "Modification is a change in the obligation by a modifying agreement

21   which requires mutual assent."  1 Witkin, *Summary of Cal. Law,* Contracts, § 715

22

23   ───────────────
     [8]   This is entirely consistent with applicable law: "In a merger the surviving
24   entity "succeeds to the rights, property, debts, and liabilities, without other
     transfer."  9 Witkin, *Summary of Cal. Law*, Corporations (10th Ed. 2005) § 198, p.
     968; *Maudlin v. Pacific Decision Sciences Corp.*, 137 Cal. App. 4th 1001, 1009-
25   1010 (2006) (contract rights of acquired entity are unchanged by merger);
     *Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1238
26   (1st Cir. 1996) held: "[I]t is hornbook law that the assignee of a mortgage succeeds
     to all of the assignor's rights power and equities" (prior recorded mortgage
27   assigned to plaintiff defeated later-filed federal tax liens).

28        [9]   The Note and Deed of Trust are read together as one contract.  *Nevin v. Salk,*
     45 Cal.App.3d 331, 338 (1975).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  (8th ed. 1973), p. 600 (emphasis added); *Wade v. Diamond A Cattle Co*., 44 Cal.
2  App. 3d 453, 457 (1975).

3      The OTS instructs on this very point:  "[L]oan terms should not change simply
4  because an originator entitled to federal preemption may sell or assign a loan to an
5  investor that is not entitled to federal preemption."  OTS Opinion Letter at p. 7 &
6  n. 18.  See also *Safeco Ins. Co. v Robert S*., 26 Cal. 4th 758, 764 (2001) ("[W]e
7  cannot read into the policy what [a contracting party] has omitted.  To do so would
8  violate the fundamental principle that in interpreting contracts …courts are not to
9  insert what has been omitted").  Failing to apply HOLA here would contradict the
10  parties' intent and impermissibly rewrite the terms of the contract.

### 3.   CONCLUSION.

12      The *Gerber* opinion did not mention, and presumably did not consider, the 1985
13  FHLBB Opinion Letter, the 2003 OTS Opinion Letter, and the parties' intent to
14  continue HOLA's application through the choice of law clause, the successors
15  clause and the modifications clause in the note and deed of trust.  Nor was the
16  comprehensive *Akopyan* decision decided when the *Gerber* court issued its cursory
17  analysis of the scope of HOLA preemption.  *Williams, Castillo, Gorton, DeLeon*,
18  and the vast majority of district court cases to review this issue, were all correctly
19  decided.  Wells Fargo thus requests this Court to correctly find that HOLA
20  preempts plaintiff's state law claims.

21                                Respectfully submitted,

22  Dated:  June 11, 2013         ANGLIN, FLEWELLING, RASMUSSEN,
                                   CAMPBELL & TRYTTEN LLP

24                                By: _____/s/  Mark T. Flewelling_____
                                       Mark T. Flewelling

25                                Attorneys for WELLS FARGO BANK,
                                   N.A.

**ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP**

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S SUPPLEMENTAL BRIEFING RE: POST-MERGER APPLICATION OF HOLA PREEMPTION**

on the interested parties in said case as follows:

**Served Via Other Means than the Court's CM/ECF System**

*Plaintiff*
Kazumi Miyayama
10381 Abisso Dr
Las Vegas, Nevada 89135

☒   **BY OVERNIGHT MAIL SERVICE:** I am readily familiar with the firm's practice of collection and processing of correspondence by Norco Delivery Services. Under that same practice it would be deposited on that same day in an Norco Delivery Services collection receptacle at Pasadena, California, with instructions to bill sender on the label.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on June 11, 2013.

| Tracy Vena | */s/ Tracy Vena* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |